Good morning, and may it please the Court. Josh Cohen from the Federal Public Defender's Office on behalf of Appellant Anthony Hamilton. I'd like to reserve five minutes for rebuttal. Mr. Hamilton was convicted of being a felon in possession of a firearm. There was no forensic or documentary evidence that tied that firearm to Mr. Hamilton. Rather, he was convicted because officers from the San Francisco Police Department testified that they saw him place a black bag in the wheel well of a black SUV late at night in San Francisco, and because another officer recalled seeing him place an object under a vehicle on an occasion approximately two years earlier. At trial, Mr. Hamilton proffered a well-qualified expert who would discuss some of the reasons that eyewitness identifications made under these sorts of circumstances may be less reliable than jurors commonly understand. The Court did not permit that expert to testify. The Court did permit evidence of prior-acts evidence, even though, according to the government's own witnesses, those prior-acts were not distinctive in nature. Because those rulings were in error, Mr. Hamilton's case was vacated and the case remanded for a new trial. What do we do with the abuse of discretion standard that attends all of those rulings? Well, Your Honor, to begin with the issue of the eyewitness expert, I think that the Court's decision in 2002 in United States v. Finley sheds a lot of light on the abuse of discretion analysis in this particular context. In that case, it was a behavioral health expert, a mental health expert that the defendant had proffered to testify. What the Court said in that case is that it is an abuse of discretion to exclude an eyewitness – excuse me, an expert who would testify about information that is not within the common knowledge of a jury. But we've got a factual determination by the district court that you didn't meet that standard, and we have to find that factual determination clearly erroneous, do we not, in order to grant relief under the abuse of discretion standard? Yes, Your Honor. And that is the reason I refer the Court to Finley, because that's exactly the analysis that the Court applied in that case and said that the Court was in error in determining that this information was not within the ken of the average juror. The problem we have in this particular case is that the district court looked at the eyewitness expert and rejected it because of one very narrow aspect of that proffer. The Court said jurors do not need an expert to know that lighting conditions affect the reliability of an eyewitness identification, but did not even discuss the several other much more complex determinations that we had proffered that expert to testify about.  It was, indeed. There are two different issues here, I think. One is whether eyewitness testimony should be admitted, and secondly, whether this expert should be excluded because of violations of Rule 16. That's correct, Your Honor. Finley – are you using Finley for both propositions? I'm not. I'm using Finley under the – for the Rule 702 analysis. Whether or not this Court were to conclude that there was a Rule 16 violation in this case, the issue is going to be is whether the sanction of excluding the expert altogether was too severe under the circumstances. Well, that's what Finley deals with. It also deals with that. That's true. This exclusion is the appropriate remedy for a discovery rule violation only where the omission was willful and motivated by a desire to obtain a tactical advantage. So it says that it's an abuse of discretion to exclude the witness as opposed to other sanctions. That's true, Your Honor. That's true. It does deal with both aspects of this particular issue. There's nothing – A particular limited part of his proposed testimony, the expert's testimony, that would have satisfied your concerns? There were really three aspects in particular, Your Honor, that we needed Dr. Loftus to testify about. One of those was the poor correlation between the confidence that a witness asserts in his eyewitness identification and the reliability of that identification. And I gather that's because these officers were going to testify that they were 100 percent certain that – And, in fact, that's exactly what they did testify. And I think it indicates the problems that we had looking at our closing argument. We were able to make reference to the fact that they were 100 percent confident in their identifications, but all we could do is appeal to the juror's common sense and say, these officers are not credible because no one is 100 percent certain of anything. That's not at all what we would have argued had Dr. Loftus been permitted to testify. Instead, we would have argued, based on his testimony, that studies demonstrate that the fact that someone is extremely confident in his identification does not make it a reliable one. We were not able to argue that because that testimony was excluded. The two other bases on which he would have testified that would have been extremely helpful to us would have been the impact of the suggestive circumstances very similar to what was present in this particular case. The fact, for instance, that the officer, when he encountered Mr. Hamilton in the apartment building, recognized him from a prior arrest. What effect does that have on whether he believes this is an individual he saw previously? Again, the other officers who made the identifications only did so after they saw Mr. Hamilton handcuffed, seated behind a squad car, having been arrested by their commanding officer. What effect does that have on reliability? And then the final area would have been cross-racial identifications. Certainly, there's case law that supports the idea that jurors intuitively understand that maybe there is going to be a problem with a white officer trying to identify an African-American suspect, but they very rarely understand just how significant a problem that can be. Can we say in view of the current state of the law, which doesn't require the admission of eyewitness testimony, that it's an abuse of discretion to apply the law as it was at the time? Even if we disagree that eyewitness testimony is not admissible, even if we believe it should be, is it an abuse of discretion for that district judge to rule, given our cases? I think it is an abuse of discretion to exclude it under these particular circumstances. When the Court is aware of the centrality of the issue, when the Court is aware that this particular areas of testimony that an individual is going to be testifying about have been approved by prior courts in the sense that they have been held to be of assistance to jurors in providing additional information to them. But in all of the cases that Judge Reinhart was referring to, our previous Ninth Circuit cases, eyewitness identification testimony was argued as having been critical to the fact that the defendant was convicted. So why is this case any different from other cases in which we have announced that there is no constitutional right to have this type of evidence? A couple of things, Your Honor. For one thing, there's two cases in particular that I think the government is relying on for the proposition that this was not an abuse of discretion. In one of them, Leban sat, the court's ruling rested on the fact that an eyewitness expert was not necessary to inform a jury that memories fade over time. That was the issue in that case. This witness does not remember anymore what that person looked like. There were not the issues that we're dealing with here today. So would you concede, then, that at least as to the district court's observation that jurors don't need an expert to tell them that it's harder to see people at night than it is during the day, there's no error there in excluding that portion of Dr. Loftus' testimony? I can understand that that is not an abuse of discretion under this court's case law. But the reason I'm emphasizing Finley is because what the court said in that case is that expert testimony does assist the trier of fact, and I'm quoting now, when it provides information beyond the common knowledge of the trier of fact. And it went on to emphasize that this Court's precedents recognize, again quoting, the importance of expert testimony when an issue appears to be within the parameters of a layperson's common sense, but in actuality is beyond their knowledge. And that is exactly the issues that we are dealing with here. Counterintuitive phenomena in memory and perception that other courts have recognized do assist the trier of fact precisely because of that inverse correlation between what jurors expect and what is actually the truth. Had the defense conveyed their – fully complied with the Rule 16 obligations? I beg your pardon? Had there been compliance with the Rule 16 requirements when the district court judge made his? What I would say, Your Honor, is that in retrospect, I certainly wish that we had provided the disclosure that we gave at the oral pretrial conference and the next day in a written statement earlier than we had. I was waiting to receive a written statement from our witness. We did not have that written statement, and therefore, I did not turn over anything prior to the pretrial conference. I don't believe that we were in violation of Rule 16 because of the shifting nature of Rule 16's reciprocal discovery obligations, that it's only until the government – it's not until the government has complied with its obligations that the defense has obligations. That said, certainly it would be preferable to disclose whatever information one has as soon as one has it, and I regret that that was not done. There was no suggestion, however, at any point during this trial, either by the court or by the government, that the violation was willful. And again, I think at bottom, the issue is, given that it was not willful, given that it was a central issue in the case, and given also that it was the kind of testimony – it wasn't a novel scientific concept that was being introduced. It was not a test that the government needed to be able to replicate. Given all of those circumstances, was outright exclusion of the expert too severe a sanction? And I think under the Court's case law, it is. If I could turn for a moment to the Rule 404b issue, I think that it is clear from the way in which the government argued this issue to the jury that what the government was really getting at, by whatever name they may have tried to label it, was modus operandi. The government's position was because the defendant had placed an object under a car on a prior occasion, it established a modus operandi that would lead the jury to believe that this was the same individual who did this act on this occasion. This Court's precedents are very clear. They have taken a very restrictive approach toward the introduction of 404b evidence as modus operandi. And what the Court has said – Breyer, with the case law that says it's a rule of inclusion, and that as long as the district court conducts the appropriate multi-step inquiry under our case law, that we then, again, judge it under an abuse of discretion standard. And didn't the district court do that here? I would not dispute that the district court undertook the four-step analysis that is dictated by the Court's case law. But there are, I think, several cases that indicate that it is an abuse of discretion to go ahead and admit under that first prong, the relevance prong, evidence of modus operandi where the two prior – where the prior crimes are not only similar but they are not distinctive. In other words, in order to be admissible, it's not just that two incidents are similar. They have to be so distinctive, and I'm quoting from this Court's decision in United States v. Luna, so distinctive that only one person could have committed both of those acts. And in this case, what we had was testimony from the government's own witnesses, from officers, that on this particular corner, it was usual, it was commonplace for individuals to secrete items under parked cars and then seek to retrieve them later. Therefore, there was nothing about the prior incident that marked it as the handiwork of the accused or bestowed upon it a personal signature such that it was fair for a jury to conclude that it must have been the same person that did it on both occasions. Alitoson Does that mean that any time, let's say, in a robbery case, that you have a similar robbery, that it has to be unique to that particular robber? That's exactly what it means, Your Honor. And I would refer the Court again to the Luna case, because it's a bank robbery case. And in Luna, the Court looked very carefully at what are the points of similarity and dissimilarity among these prior offenses. And to this particular robber as opposed to other robbers who follow the same M.O., that's my question. Because the problem, I think, from the district judge's perspective is the fact that many of these cases, take a robbery case, for example, can frequently involve similar types of markers that, taken together, are adequate to establish under 404B evidence of modus operandi. I certainly agree with the general proposition. The question is, where do you draw the line? And what the Court has said is it has to be extremely distinctive. That's the point of the personal signature. But this has gone so far, would it counsel to say that the robber is the only robber in the history of Federal bank robberies to carry a pearl-handled 45 into the bank? I don't know that that's necessarily what's required. But if, for instance, to use the ---- If I understand your argument correctly, you're taking the position that it has to be unique to this particular defendant. Correct. Correct. Because it is only then ---- It has to be sufficiently distinctive that it is fair to infer that it is the same defendant who committed the prior offense and this offense. And so in Luna, for instance ---- Mr. Cohen, I'm not understanding your argument. That's a different point. The point is, is it distinctive enough to conclude that the two acts, the 404B act and the act which the defendant is on trial, were committed by the same person, not that two robbers might have the same modus operandi and commit crimes in a similar fashion. 404B evidence might be admissible as against both in separate trials. If I have been vague on that point, Your Honor, I want to be very clear. It is the fact that they have to be sufficiently distinctive that it is fair to make that inference. Correct. It's a question of whether or not this is the guy who engages in this pattern of crime. Correct. Correct. And so what this Court has said, for instance, in a robbery case is that the fact that robberies were conducted takeover style by robbers who were wearing sweatsuits and masks and gloves, by jumping over a counter and pulling teller's hair and swearing at them, and then jumping into a getaway car that was abandoned with the motor running, those are the facts that were in common in Luna, is not sufficient because it describes too many offenses that can be committed in a very similar way. It's not fair to infer that it was necessary to distinguish. You've got about four minutes if you want to get to your final issue. I think I'll reserve my time for rebuttal, Your Honor. Good morning, Your Honors. My name is Elise Becker. I'm an assistant United States attorney in the Northern District of California. May it please the Court. The district court did not err in excluding the defendant's expert testimony because the court properly determined that first the defendant failed to timely comply with his Rule 16 requirements, and also that the testimony of the proffered eyewitness identification expert was of marginal value to this jury in this particular case. This Court has repeatedly upheld the exclusion of such testimony, and as the Court has already indicated, the Court reviews the district court's finding for an abusive discretion and would be required to find clear error in this case. This case is very distinct from Finley. Finley, first of all, did not involve eyewitness expert identification testimony. And second of all, this case at hand involves eyewitness testimony of police officers who are trained to make identifications and who have extensive experience working in this particular neighborhood and in making numerous arrests here. Second the ---- Did anyone ask them if they knew who the person was before they saw him inside? Yes, Your Honor. The question was asked. The police officers did not recognize the defendant as Anthony Hamilton when they first saw him on the street. They recognized the person they saw on the street as the person who was found in the building. It's once he is found in the building and they're close enough to him that they then recognize him as Anthony Hamilton. Although they had seen Anthony Hamilton and had dealings with him before. Yes, Your Honor. They had observed him on numerous occasions. The district court, furthermore, did not err in allowing evidence of the defendant's prior act of appearing to secrete something in a parked car in the exact same location of Victoria and Randolph Street on her prior occasion, which was almost two years to the date of this incident. The court engaged in a proper balancing test to determine whether or not this evidence was going to be relevant and not overly prejudicial to the defendant. And, in fact ---- How could it be prejudicial? How could this testimony be prejudicial, Your Honor? The defendant's argument is that testimony that the defendant appeared to have been I'm sorry. I thought we were still on the first issue. I missed your transition. I'd be pleased to go back to the first argument, if you'd like. Why is eyewitness testimony not important for a case where that's the only issue, whether the identification is correct? This Court has repeatedly found that the testimony, while it may be helpful to a jury, is the defendant's interest in being able to question and counter the witness's identifications is sufficiently satisfied with an expansive jury instruction. In this particular case, the defendant requested such an instruction, which is not part of the Ninth Circuit jury instructions on eyewitness testimony. Here, he was able to argue ---- Your position is it would ---- you're never entitled to eyewitness experts. No, Your Honor. That is not my position. Certainly, this Court may find under certain circumstances that are not this case that such testimony would be relevant and should be admitted. This just does not happen to be the case in which it would have been particularly helpful to the jury as the district court determined. Okay. Why is it not as helpful to the jury in this case as in any case? I mean, if the question is, is an eyewitness identification correct, why isn't eyewitness expert testimony either helpful generally or not helpful generally? There are certain different aspects of the expert's testimony which could be helpful in some cases. As the Court has already noticed, certainly the jury was able to determine that distance and lighting have an effect on a witness's ability to make a proper identification. The suggestiveness of a show of identification or some other factors of the proper testimony. However, in this case, the evidence was clear that these were police officers who were making the identification. They are trained in noticing facts about a person and in making identifications and later being able to recall the characteristics of that individual. Police officers don't ever misidentify? They certainly might, Your Honor. Not in this case would be the government's position. I'm not suggesting they did in this case. I'm just saying why isn't the testimony that people, even police officers, misidentify people and the explanation of the reasons why, if that is useful testimony in general or in some cases of eyewitnesses, it may not be as prejudicial to exclude it for the reasons you're arguing. But I don't think that that explains why it's not as useful. Or as relevant. I'm not suggesting that the Court adopt a categorical approach that this testimony is presumably not admissible until proven otherwise. Again, it may be relevant in some cases. The defendant here fails completely to show the relevance. The proffered expert was never proffered to testify with respect to the identifications in this particular case. It's not clear at all from the record why the expert would have been helpful to this jury. If you take the expert out of the context of this case, could some of his testimony be helpful to a trier of fact? Absolutely. But as applied to this case, the defendant proffered no link between the testimony and the facts in this case. And as the evidence was borne out during the course of the trial, the police officers all testified that they had clear vision, there was sufficient lighting, they had an ability to view the defendant, they had an ability to recall him, and that they were 100 percent sure that the person who was found in the building was, in fact, the same person that they saw in the street secreting an item later to have been discovered to be a bag containing a gun and ammunition under the rear wheel of a car. Had the government fully complied with its Rule 16 obligations? Yes, Your Honor. The government complied. The district court initially didn't think so. The district court did not make that initial finding correct. The government preferred. It was a lousy. His words were something of a lousy Rule 16 summary. I'm going to exclude the fingerprint expert. The discussion before the district court focused on one expert witness in particular, Lynn O'Connor, as a fingerprint expert. In its expert notice disclosure to the defendant prior to the pretrial conference on November 22nd, the government provided notice of three experts. Ultimately, the defendant stipulated to the testimony of two of those experts. But there's no question as to – there was no discussion, simply in the record, as to whether or not the notices with respect to those two witnesses were not adequate. Furthermore, with respect to the expert whose testimony was questioned by the court in determining whether or not the government had complied, the district court ultimately found that with respect to a narrow issue, the government had complied with its disclosure requirements. That disclosure requirement went back to its notice. It was the statement that was – The court said it complied with respect to a narrow issue. That means it didn't comply with respect to the broader issues. The court found that the government had not provided adequate notice with respect to one of the opinions of one of the experts' testimony. The government proffered this particular witness, Lynn O'Connor, for two purposes. One is to testify that she had examined the weapon and the ammunition and had recovered no prints. The second expert testimony the government wanted to elicit from her was that in her training and experience, sometimes weapons retain prints and sometimes they do not. And that would have explained why in this particular case it was not unusual that no prints were recovered. The court found that the government had not provided adequate notice of that second expert opinion, that in some cases there are prints, sometimes there are not. The court did find that the government had provided adequate notice that the expert had examined this weapon and had not recovered any prints. That notice, the government's satisfying Rule 16 goes back to when it provided the notice, which was November 22nd, prior to the pretrial conference. At that point in time, the defendant had not provided any report from its expert and simply – Is the defendant required to assume that the government has satisfied its Rule 16 obligations? Your Honor, I think that the question can be litigated before the district court after the fact, but I don't think it's reasonable for the court to hold the defendant's reciprocal discovery obligation being triggered as of the point that the district court determines that the government complied. As long as the government gives something, even if it ultimately is later determined not to be in full compliance with Rule 16, the defense must nevertheless satisfy their obligations under Rule 16. I think it's a relate back, Your Honor. Here, where the government complied at an early date, everything happened on a short time frame here, obviously, but where the government had complied prior to the pretrial conference, and again, it's not – there's no dispute in the record with respect to the two other experts aside from the defendant filing a notice saying that it did not deem the government's notice of expert testimony satisfactory without addressing any of the – any notice in particular. If defense counsel had provided the notice on the day of the pretrial, would the district court have found a violation? The district court gave the defendant several opportunities to comply. I think that a big – No, my question was if he – if when they walked into the pretrial, they had the written statement, and it was an adequate written statement, would that have been a violation of the rule? The defendant would, therefore, have provided notice of his expert testimony, and assuming that he was able to establish the opinions and the basis and reasons for his expert's opinions, in this case, the court could have found that the defendant had met his reciprocal discovery obligations. In this case, the court's concern was not only had the defendant not timely complied, but also the prejudice that inured to the government of this extremely late disclosure. Well, okay. If it would have been timely on Friday, the question is how much prejudice is there because it's not provided until the next business day? The prejudice to the government, Your Honor, is that the government is faced with, as the court characterized it, seven massive opinions in a report that it's expected to digest and rebut at trial. Well, the government's – you know, the government filed a motion to exclude not for failure to comply with Rule 16, Discovery, but under 702. And never in the government's motion, the government didn't say, oh, we're going to be prejudiced. The government at that time didn't know the substance of the defendant's expert's testimony. It literally was not disclosed. I have the impression that you seem to be familiar with this particular witness or what he was going to testify to from reading your motion. The subject of eyewitness identification testimony was not an unknown quantity. However, what this – and, in fact, the Doctors Loftus from the University of Washington are quite well known in the criminal defense bar and among prosecutors, are they not? The question here, Your Honors, was how is his testimony going to be relevant to this particular case? You didn't complain on – I didn't read in your motion that you raised prejudice. It was the district – after the district court, before the district court is when you suddenly raised prejudice. It just seemed to me that this massive material has given you this tremendous burden that you couldn't possibly do. How much worse can it be one day later? I can understand if you had answered my question and said, well, Friday, it would have been impossible. We wouldn't have had time to prepare for trial if we'd gotten it then. But you said, no, if we'd gotten it Friday, that would have complied with Rule 16. But if we got it Monday, we have this impossible burden. Your Honor, it's a separate question whether or not they would have complied with Rule 16 and whether or not there would have been prejudice to the government. You said it would have complied, but you would have been prejudiced? Well, if they provided their required notice and they satisfied their discovery obligation, technically, they would have satisfied Rule 16. However, the court still has to determine whether or not that testimony is going to be relevant and admissible in this case. That's a totally different issue. We're only talking about the violation. Am I reading his post-trial order at 624 of the excerpt of record? The district court found both, did he not, that there was a violation of Rule 16 and prejudice to the government because of the late disclosure? That's correct, Your Honor. So you didn't have an opportunity to designate a counter-expert who would have been involved in rebuttal and to try and prepare him to respond to Dr. Loftus' multiple-page opinions?  That is, in fact, the prejudice that, while perhaps the government didn't raise it at first, certainly was clear from the discussions before the district court that the prejudice was there. Are you saying that there could have been prejudice even if there were proper disclosure under Rule 16? This was a late disclosure. And you're saying that you can comply with Rule 16 and still give the government and still the government have prejudice because you complied with the rule in a timely manner under Rule 16? I'm sorry, because they complied in a timely or untimely manner. If you comply in a timely manner with Rule 16, can the government still have prejudice resulting from that that would justify excluding it? Perhaps, depending on the substance of the expert's report and the proffer testimony. In this particular case, I can only address the factors present here with Dr. Loftus' testimony. It's hard for me to understand how, if you comply with the rule, which is what you told me they would have done if they had given you this information on Friday, it's hard for me to see how, if they complied with the rule, you could have moved to exclude it on the basis you were prejudiced. I can understand the other basis. It's not properly admissible, all of that. In this case, while they may have complied with Rule 16, it was not a timely compliance. If your question is, was it a compliance? Untimely compliance. If you're untimely, do you comply? It's still, to the extent that it satisfies the requirements of Rule 702, could be deemed a compliance. The Court viewed it as an untimely compliance. Notwithstanding, they did eventually turn over a full report. It wasn't done on Friday. Because it certainly was not done in a timely fashion. That's correct. They waited until the eve of trial. They're doing a nice job of bobbing and weaving. Your Honors, to the extent that there's any question as to whether the record is clear from the government's perspective that the government complied, the defendant did not timely comply. The Court had as an option to exclude the testimony entirely if it determined, A, that the defendant had not complied, and up until a certain point, in fact, the defendant had not. And the Court also can determine whether or not this evidence is going to be helpful to the jury. And the Court may be able to do that. You've got about a little less than four minutes. It's up to you. I'm pleased to move on to the other issues, Your Honors. I started discussing the Rule 404b testimony. The district court did not err in allowing that evidence of the defendant's prior act in the exact same vicinity of engaging in very similar conduct almost exactly two years prior to the date as probative of the defendant's identity and modus operandi. The defendant in this case has simply failed to demonstrate any prejudice to him, both as a result of the admission of the testimony as well as from the jury instruction. The record indicates that during the testimony of Officer Poon, who was the 404b witness for the government, that the defendant handed out to the court a jury instruction that it wanted the court to advise the jury of the limiting purposes for this officer's testimony. And after the court presumably read that instruction, the defendant did not object. That instruction included all of the factors that it's now suggesting were improper. After Officer Poon's testimony, the Court reminded the jury of the limiting instruction that it had previously given. The Court later engaged, again on the record, with a an evaluation of the testimony to determine what, if any, factors under which it was admissible and could be argued by the parties in closing arguments. And the Court found, after the government showed that it was admissible for a variety of factors, that it was appropriate for the Court to consider it for that purpose. This is unlike all the other cases in which the Court did not engage in that balancing test and did not make a determination on the record. As to the admissibility of the evidence with respect to any particular factor. Furthermore, the district court's colloquy with Juror Hood, who's the juror who approached the court during deliberations to indicate that he was having difficulty with the rest of the jury, as well as the subsequent instruction to the jurors was not coercive, did not result in any error in this case. In fact, the record again shows that after engaging in a colloquy with Juror Hood in which the Court questioned whether or not the juror was still able to perform his duties as a juror and deliberate with his fellow jurors, the Court asked the parties how he should handle the situation. The defendant suggested, perhaps you should give the same instruction that you were giving with Juror Hood, the one where you have a duty to deliberate. And the Court, in fact, did that. He re-instructed the jury as a whole with respect to their duty to deliberate. It was the defendant's suggestion? Yes, Your Honor. It was not an Allen instruction. It's not a modified Allen instruction. It's their duty to deliberate. To the extent the defendant is suggesting that it was unduly coercive because the judge identified Juror Hood as being somebody who had complained about the rest of the jury, and to the extent that the defendant suggests it was coercive because the judge told the jury, if you don't reach a verdict today, you're going to have to come back on Wednesday, which was the Wednesday before Christmas, the trial actually was on schedule. The defendant picked this trial date and knew very well it was falling right before the holidays. The Court had, on several occasions, informed the jury that the case should be submitted to them that particular week, and Friday was the end of that week, and if it was not complete, it would carry over to the following Wednesday. There was nothing coercive in the judge's instructions nor the suggestion that if they didn't reach a verdict, they would have to come back. He didn't encourage anybody to change their mind. There was no indication that there was one holdout juror, and the jury as a whole had not sent out a note that they were not able to reach a unanimous verdict. For all those reasons, the government respectfully requests that the Court affirm the defendant's conviction. Thank you. Thank you, counsel. Your Honor, to clarify one aspect of the model jury instruction 7.1 that was re-read to the jury by the Court at the conclusion of the trial, it is true that we did propose to the Court and agree with the Court that it might be appropriate to re-instruct the jury using the text of model jury instruction 7.1. But why isn't this invited error, then, if you now claim it was really an Allen instruction and it was coercive? Because what the district court did, after we had reached that sort of informal agreement, was to go beyond the text of model jury instruction 7.1 and say a couple of additional things which had a very coercive effect on the nature of the deliberations. One of those was, I am not going to declare a mistrial until I am convinced that it is impossible for you to reach a unanimous verdict, and if we don't reach a unanimous verdict this afternoon, you're going to have to, which was a Friday, you're going to have to come back next Wednesday to continue to delivery. Granted, so will I, but all of us will have to come back. That went beyond the text of model jury instruction 7.1. Under this Court's precedent in Jimenez v. Myers, an Allen instruction is any instruction which tells the jurors to go back and to continue deliberating and to try to reach a unanimous verdict.  Roberts. Was it understood, as counsel just said, that at the beginning of the trial, you know, sometimes at the beginning of a trial, the judges say, this is what we, this is the schedule that I anticipate should be submitted to you on, say, Friday. If there's not a verdict on Friday, you'll be back here, we're going to continue the matter until the following Wednesday. I don't believe that. Was that, at that time of the year, I mean, most judges are very much concerned about jurors' travel arrangements and everybody's leaving and. They were not surprised, Your Honor. I'm not suggesting they were surprised. But the jury received the case in the middle of the day on Thursday. They deliberated Thursday afternoon. Friday morning, it was around Friday lunchtime that this incident with the juror occurred. And then at 4 o'clock in the afternoon on Friday, right when they were to adjourn for the weekend, we received a note that they had, in fact, returned a verdict. And it is the nature of the colloquy, particularly under this Court's decision under Se Chua, where the Court is aware that there is a holdout juror, that juror indicates he does not believe that further deliberations would be effective. And then combined with that, the time of the year and the admonition that he told the judge that he was willing to go back and continue deliberating, what he said was, I think you're just maybe not reading the full. It's just my sense was that he engaged in a colloquy with Mr. Hood, and Mr. Hood said he'd be willing to go back and continue, but he didn't he wanted an end to the name-calling, which the judge took care of by admonishing the jury to behave themselves. And then what he said, Your Honor, is while I am willing to go back and to continue to deliberate, I do not believe that further deliberations would be effective. That was exactly the question that was posed by the district court. Do you believe that if you continue to deliberate, those deliberations will be productive? I'm paraphrasing. But his answer, I'm not paraphrasing, was no. With respect to the Rule 16 issue briefly, I want to be very clear that what the district court ultimately allowed the government's witness to testify about was not an expert opinion. It was merely the fact that a test had been conducted on those – on the firearm to determine whether there were fingerprints and that no fingerprints were recovered. It was not an opinion. What about the failure to object on the limiting instruction that the district court gave? As I understand it, he gave the instruction on at least two occasions. There was no objection, and it wasn't until, what, I guess final closing instructions were being worked on that an objection was raised? Well, obviously, Your Honor, there was an objection raised very early on to the introduction of the 404B evidence in the first place. You have to object to the form and content of the limiting instruction once the court rules that the evidence is coming in, and you didn't do that, or you're behind it. What we did, Your Honor, was when that evidence came in, we did ask the district court to give a limiting instruction. And when my opposing counsel refers to us handing something up to the court, during the context of the trial, it was the model jury instructions themselves. He then gave those instructions. We objected before the final instructions to the form of the instruction because we believe that the government to waive that. If you tendered the form to him, he gave it twice without objection, and then after the bell's been rung twice, you seek to unring it the third time. Two reasons, Your Honor. First of all, because it was not admissible for any of the purposes that were enumerated in the rule, any of them. It should not have come in at all, and that was. But that requires an objection, so that there's an opportunity, if there's a problem with the content of the instruction, to give the district court a chance to correct the problem. And that was the objection that we lodged pretrial. We said it is not admissible for any purposes under 404B, and that is what the court disagreed with. There are two different issues, again. One is whether it was admissible, and two, whether there's a problem with the instruction. And Judge Tillman is pointing out that you did not object to the form of the instruction two times, and you did on the third occasion. Haven't you waived the objection as to the form of the instruction? I believe that the more important issue, Your Honor, is the former. But as to the latter, I don't believe that we waived it, because we said to the district court that the instruction doesn't cure the problem anyway, no matter what instruction. And that's the bottom line, Your Honor, yes. Thank you. Thank you very much. The case just argued will be submitted. The final case of the morning is.
judges: Reinhardt, Paez, Tallman